Edie Cunningham from the Federal Defender's Office, on behalf of Mr. Estrella-Yuan. Mr. Estrella-Yuan's conviction should be reversed for two reasons. First, he was tried as a serial re-entrant, even though that was not the charge. Extremely prejudicial evidence of prior removals and illegal re-entries was introduced by the court, or admitted by the court, without careful consideration, even though it was completely unnecessary to the government's case. Second, Border Patrol agents in El Paso followed a flawed procedure in executing the 2007 warrant of deportation, the only deportation at issue in this case. Mr. Estrella-Yuan did not contest knowledge or alienage, but the government's proof of the January 26, 2007 deportation was very problematic. Under these circumstances, there's a significant risk that Mr. Estrella-Yuan was convicted based on his prior deportations and illegal re-entries, instead of what happened in this case. I'd like to first talk about the 403 issue. It is clear under Supreme Court precedent and this Court's precedent and that of other circuits that courts must consider evidentiary alternatives when determining whether the probative value of other acts' evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues. The more compelling the other sources of proof, the less probative the other act's evidence. This is because prior bad act evidence is very persuasive to juries and likely to lead them into a sequence of bad character reasoning. As courts have recognized, that's often why the government tries so hard to get it in. But our legal system is built on the premise that defendants must be tried on the charge defense and not on what they may have done before. Here... Is there a harmless error analysis that applies to this, though, if the evidence otherwise would be strong for the defendant's guilt? Well, Your Honor, evidence was overwhelming on knowledge and alienage, but it was not, it was far from that, on the alleged deportation for January 26, 2007. Correct me if I'm wrong on this. I thought that agents Renteria and Vasquez, backing up the I-216 manifest, saw your client get off a plane from Chicago to El Paso, identify himself, and quite literally cross the border. And then they filled out this I-205 form containing his name, signature, photograph, and fingerprint. Isn't that in and of itself, even if you claim that there was a problem with the documentation, isn't that enough to show that he was previously removed from the United States? Their testimony was problematic because they said all they did was call a name off the list. The 2007 warrant of deportation, as they said, was created in Chicago. That's where the print, the signature, and the picture were affixed. They didn't look at that document when they were verifying the individuals go across the border. The document itself, if you look at the second page of the I-205, which is the ER-306, it's apparent from the face of that document what the correct procedure is. There's a picture on it. There's a print on it. It says that we are witnessing this person on this document cross the border. That's not what they did. They didn't even look at it. Judge Gould, if I could ask you a question on that. Yes, Your Honor. I realize from the briefing that there were some problems with the document or with whether all the normal procedures were followed. But why under our precedent shouldn't we say that the I-205 is admissible as a business record and all these problems go to wait so they could be argued to the jury, but the evidence comes in and then you can make your argument for your client? In other words, there are a lot of situations in trials where evidence has some problem or other with it, some qualification, some argument against it, and it comes in and the problems go to wait. Why don't these problems, like the other alien signing the line or the inconsistencies, why don't they just go to wait? Your Honor, this document was admitted as a public record under hearsay exception 8038, and that exception assumes that agents are properly doing their job. If you look at the comment to that exception, that is the justification for the rule. Does it require perfection or does it require that they do their jobs in the way that these people normally do their jobs? No, it requires that they do their job properly to demonstrate that they are actually observing the matters that they have a duty to report by law. They testified that they did observe that, did they not? They testified that they observed someone who responded to a name, a roll call, go across the border. They did not testify that they actually physically verified that this was the right person. Let me go back, though, to Judge Gould's point that it goes to wait and not to admissibility. On the 8038 note, there's no foundation that's required comparable to 8036, which is a business record exception. So, you know, you have that, the fact that that foundation is not required, and you have the fact that we categorically allow those records into evidence because it's understood that they are form records. It's the kind of records for which 8038 was designed. And the jury could consider those inconsistencies in the record in the context of the testimony, testimony of the officers that they saw someone they believed to be the appellant in this case across the border. So why would we exclude the document under all of these circumstances? Your Honor, this is the core requirement of 8038. It goes to admissibility and not wait, whether the agent is properly doing their job. And my ‑‑ I submit that the form shows that what they're supposed to do is physically verify. This is extremely important because, as you say, if this is properly executed, if this procedure is properly followed, it is evidence of deportation. Thousands of people are deported every day. In this instance and in many instances, the deportation begins in one city and the deportation happens thousands of miles away. And so it's very, very important to get this right. It has serious repercussions for defendants in this country. Counsel, do you have any case from any circuit where a federal court has held that this particular form, which I assume is like a national form, that this I-205 is not admissible as a business record because of these kinds of protocol or inconsistency problems? No, Your Honor. A court has held it's not admissible. No, Your Honor, but I do have cases that show that the proper procedure, cases that have analyzed the proper procedure for witnessing a deportation, talk about physical verification. They either talk about looking at the picture and making sure that it's the right person or the fingerprint is actually taken at the port of entry right before the deportation. But don't we have testimony of physical verification with the testimony of the officers saying that they observed the appellant cross the border? Your Honor, they don't have any idea who they observed because they didn't look at the picture and they didn't take the fingerprint. But didn't they testify that they did? They did, but they had no independent recollection. They were just basing it on a document and they testified that their procedures did not involve physical verification. And that doesn't distinguish it from any other bit of evidence that comes in at a trial where a witness says he or she saw something and, you know, the other side says no, you didn't. And that's why you have a jury to sort it out. Doesn't that go back to Judge Gould's point as to weight and not to admissibility? Well, Your Honor, I would like to move back to the 403 issue because I think you make a very good point. Even if this wasn't a problem, and I submit that it was for the reasons that I've stated, the 403 error was egregious and it was not harmless because, as you say, there were problems with this deportation. There were problems with the way the agents' procedures, they didn't physically verify. There were all other kinds of problems with the warrant of deportation. All right. If we go back to that issue, though, I don't know that that's available to you because the evidence in this case seems overwhelming. And, you know, including the fact that they found him hiding under a bush about a mile north of the border. He told the Border Patrol Agency he was a citizen of Mexico and he was illegally present. After Moran died, he recited that same information. Isn't there sufficient evidence aside from this? Well, Your Honor, your ---- Until the jury could have found that he was not properly here. Excuse me, Your Honor. No, go ahead. Sufficiency analysis is distinct from harmless error analysis. The government has the burden to prove that the 403 error did not impact the verdict. And because of these peculiar oddities with the I-205, including the procedure where they did not physically verify the deportation and the presence of different signatures and there's no A number on the second page and all of the problems that are detailed in the brief, a reasonable jury could well have harbored a reasonable doubt about whether or not Mr. Estrella I was in fact deported on January 26, 2007. And the government had to prove deportation on that date beyond a reasonable doubt by terms of the indictment and the jury instruction. What role, if any, does the fact that the district court gave limiting instructions to the jury play? Your Honor, as the Supreme Court and Old Chief recognized and as this circuit and other circuits have recognized, limiting instructions are not a panacea. And this wasn't even a particularly strong limiting instruction. Empirical research shows that they're really not that effective. And sometimes they can even backfire. If evidence is highly probative and necessary to the government's case, then perhaps it's best for the defendant to have a limiting instruction. But that was not the case here. The evidence was completely unnecessary, as, Your Honor, you pointed out a minute ago, because of the overwhelming evidence of knowledge and alienage and the other elements besides this deportation on January 26, 2007. This is extremely prejudicial evidence because it's exactly the same thing for which Mr. Estrella I was charged, illegal reentry. The documents repeatedly refer to prior illegal reentries, to prior deportations. This very, very prejudicial evidence, which was completely unnecessary, may well have distracted the jury from the real issue, which was, did they prove beyond a reasonable doubt that he was deported on January 26, 2007? And, you know, distracted the jury into thinking, well, who really cares? Because if he's done it several times before, he's likely done it again. And the government's argument in questioning only underscores this prejudice because they had the agent recite the very most prejudicial things from these documents on direct examination, and then the government emphasized it again in closing argument. And the standard of review for our purposes in analyzing whether an error was made here. It's abuse of discretion, but I have two things I would like to say about that. The Court did not consider evidentiary alternatives. If you look at the transcripts where she's considering this evidence, she's concerned with whether the witness can establish foundation for the documents. And this is ER 232 through 34, and the related pages. She's not thinking about evidentiary alternatives at all. So she didn't apply, she didn't fulfill her duty to carefully review and limit the evidence under this Court's en banc decision in Curtin for 403. And also, even if she had, it's simply illogical to look at all of this overwhelming evidence of knowledge and other signature exemplars and say that the probative value was not substantially outweighed by the danger of unfair prejudice. And I'd like to reserve the rest of my time. Very good. We'll hear from the government. Good morning. May it please the Court. My name is Bridget Beatty, and I'm appearing on behalf of the United States. The Court should affirm this conviction because the evidence was properly admitted and there was no abuse of discretion, and there was sufficient evidence to uphold the conviction. I'd like to start where the Court began with the issue of the admission of the I-205, the warrant of deportation from January 2007. As the Court noted, the errors that the defense quibbles about really go to the weight of this document, not its admissibility. Really, when you look through all the rhetoric, what they really complain about are two things. One, that the defendant himself signed on the wrong line. The agent said that's not really proper. He should sign on a different line, but it doesn't matter. It's irrelevant. It happens. It would be an absurd result that the government could not deport people or have official documents if an alien were to sign in a different place or play a game and sign their name improperly. The agents then signed and verified the departure. The other thing they complain about is that there's an extraneous signature on it, and the government conceded that they could not explain that signature. But what the I-205 does include is his fingerprint, and that is undisputed. There was expert testimony that it is indeed the defendant's fingerprint. His name, his A number, his photograph, and his signature, which they dispute it's his signature. But there were multiple examples of his signature admitted into evidence, and the jury could reasonably compare those signatures and conclude it was his. But does the record indicate, were the fingerprints taken and the other elements of the card, the I-205, done in Chicago before he was brought to cross the border? Yes, it does, Your Honor. The agents testified that the procedure, as Ms. Cunningham alluded to, when an alien is being transported from one portion of the country to another for removal, the document will be filled out in two locations as a matter of necessity. So the agents who are placing the aliens on the aircraft to be removed take the fingerprint, the photograph, and begin the document. When the alien arrives at the port of entry in El Paso, the final steps are completed, which is just the signature of the two agents who verified the departure. Is there any evidence in the record that the agents in Chicago, if you will, checked these folks off as they got on the plane and verified they were getting on the plane? The agents in Chicago did not testify, and, Your Honor, the government would submit that they're not required to do so. No, and I'm not saying they do. I just want to know whether the record shows whether that's what happened. No, the agents from Chicago did not testify, and the agents in El Paso testified as to custom and practice and how this is done habitually. It comes to them in this form. It is done, the practice for ICE is that it is done by the agents putting the alien on the plane. That under Rule of Evidence 406 is perfectly acceptable, and it is the point of an 803-8 exception that this is a public record, that this comes in without foundation normally, which leads to another important point. The defense attacked this document in a pretrial hearing. Their entire opening argument went to the weight of this document and their closing argument as well. The district court judge had a specific hearing and dealt with this and required the government to lay a foundation in which she said they need to show that the document is what it purports to be and that it relates to this defendant. So she gave them extreme protection, far more than they're entitled to under the rule, before admitting the document. Counsel, Judge Gould, if I could interject a question. Could you let's put the I-205 for sake of argument to the side. Assume we conclude it's admissible. But how do you respond to petitioner's other argument, which is that all the other deportation evidence introduced was unduly prejudicial, should have been excluded under Rule 403, and is even more important because of the issues on the I-205 that I have argued or suggested probably go to weight. How do you deal with 403 and with these other deportations? Yes, Your Honor. The evidence of the prior removals was admitted properly under 404B. The defense does not even now contest the 404B element. They just contest the 403 prejudice prong. And the government would respond that the evidence was properly admitted. The evidence showed different forms of documents to show that he had been removed on prior occasions because the government was put to its proof. The defense did not stipulate to a single element. They contested vigorously the elements of the crime. They filed motions to suppress his admissions to the agents when he was arrested. So they renewed those objections to the admission of the stipulate, excuse me, to the court allowing the testimony of his admissions at the border when he was arrested. So the government was put fully to its proof on all elements of intent, meaning he knowingly and voluntarily entered the country, alienage, and the prior removal. Do you think you met the requirements of Brown, U.S. v. Brown? Your Honor, I'm sorry. I'm not familiar with that case. The Harvard case in 1989 dealing with harmless error and what the government's burden is in that situation. Well, that also ties, of course, looping back to the harmless error prong. The government had to prove its case. This Court has held that an admission of alienage, the alien's admission and confession of alienage is not sufficient. The government needs corroborating evidence. So all of this information needed to come in to prove the elements. It was not improperly admitted. But the disputed evidence shows three deportations and two reentries. Is that right? The documents, Exhibits 1 and 2, go to a removal in 1990. Exhibits 3 and 6 go to a removal in 1991 and a reinstatement of that order. And then the final documents to complain about are the warning document that accompanied the removal that was charged in the indictment. But you didn't have to prove any of these prior offenses in order to establish the known involuntary element of the offense, did you? I believe that the government needed to present that evidence because if the defense had been successful, and, of course, we're looking at this with hindsight, if they were successful in precluding his admissions, what would be left with was the circumstances of his arrest that he was found near the border. If you showed that he had been deported in 2007 and was subsequently found in the U.S. in 2009, that would have been sufficient, right? Yes, Your Honor. But you remember they were challenging vigorously the removal in 2007. Every element of our evidence is being challenged. And the court, this Court has held that the government can, as you will, hedge its bets. We can put in different types of documents. And we did. We had a warning. We had a warrant. We had an I.J. order. We did not put in identical documents. And that distinguishes it from some of the cases they cited where, say, seven identical documents were admitted. We also did not admit any conviction documents. And I ---- Well, with respect to Elmich, didn't they, didn't the defense stipulate that he was an alien? Didn't they make that in March of 1999? He did enter a stipulation from an ---- it was from a document that was entered in a court in Chicago in 1999 that would establish he was an alien in March 1999. But that does not establish that he was an alien in March 2009, which is what we had to prove. And that's a decade in which his status could have changed. So the I.J. just revealed that he made admissions regarding alien ---- Elmich at the time of his arrest in 2009. Is that right? That's correct. So you didn't need this evidence that was contested to establish Elmich, did you? Yes, we did. Because if you look at Higuera-Llamos, which is a case from this Court, that alien ---- admission of alienage alone is not sufficient. We had a decade to cover. All of the evidence showed the tendency that he was an alien. He was warned in 2007. He made admissions in 2009. We had a stip from 1999. I'd like to go back to the stip from 1999 because I think it raises an important point about what the district court did in this case. Defense counsel suggested the court did not do a 403 balancing. The government would disagree with that proposition. That 1999 stipulation, in fact, shows what the district court did. This was not an on-the-fly, in-the-courtroom order. There were motions filed, multiple motions filed about all of these issues. There was a day-long hearing held. She ordered the admission of a 1999 conviction document with redactions, and the parties talked about redactions. Then at the time of trial, the defense ultimately agreed to the admission of this stipulation, which was not a conviction document. And again, there was an agreement of redactions. So the court was fully aware of redactions. Defense did not request any redaction in these other documents that showed prior removals. The government would submit as now subject to plain error review. They did not ask for that. They didn't object on that basis. They made objections such as relevance is too long ago or just generally 403. The district court did her job. She balanced the evidence. She looked for the least prejudicial evidence. Not all of the evidence was admitted. For example, the government opted not to admit the 1999 conviction. The government did not put in evidence of a 1980 removal. So it was curled down to be the least prejudicial evidence in order for the government to prove the elements of the crime, which it was required to do so beyond a reasonable doubt. So from your perspective, the district court in its hearing carefully winnowed out what you wanted to put in and only admitted that which was necessary to prove the offense. Is that a fair statement? I think it's fair. And I think it's also fair to add that the government was withdrawing things. The government voluntarily agreed not to present the 1980 conviction. There's a lot more evidence that would falsely color or at least prejudicially color the defendant's activities that was kept out in part because of the balancing that the court took in the hearing. I believe that's correct. I think it's fair to say the government could have attempted to add more evidence to show that he knew he was in the United States, that he knew he wasn't supposed to be here, that he was voluntarily here, and that he was an alien at the time he did this. Does the limiting instruction color this even more? Yes, it does. And the limiting instruction, importantly, was given twice, right after the evidence came in and then at the close of evidence. And it's also important to know that the defense stipulated to the content of the limiting instruction. Not only did they not object, there was a stipulation to its language. And now they complain that it wasn't sufficient. Again, I think we're looking at plain error review when they or even invited error when they agreed to the language of the limiting instruction. One other thing. I know defense counsels provide the court with a form of a demonstrative summarizing their view on the prior evidence. And I would note there is an error on it in the tab that talks about Exhibit 3. If it's what I'm thinking, we indicated we weren't going to receive that here. I know it's part of the record, if I understand correctly. No, it is not part of the record. Okay. All the better we didn't take it. Okay. Yes, I just wanted to. Yeah. We did not receive it. We did not examine it. Okay.  I would like to go back to your comments on harmless error to conclude my comments, please. As the Court has noted, there was strong, if not overwhelming, evidence that this gentleman was removed from the country in January 2007. An I-216, which is a manifest, was prepared. There's no challenge to the accuracy of the manifest. It lists all the persons on the plane. His name was on that list. The I-205 was begun in Chicago. There's no challenge that it's not his photograph name, a number, or fingerprint. It accompanied him on the plane. When the plane was met in El Paso, the agents testified that they checked the names on the warrants against the names on the manifest. They called the aliens off. They take them out of handcuffs and shackles, put them in a bus, drive them to the port of entry from the airport, put them in a holding area, again called their name on a roll call to return their medications and their personal possessions, and then physically escort them and watch them as they walk over the bridge into Mexico. So for purposes of understanding completely, when they came from Chicago on the plane, one of these folks, Mentoria or the other agent, would have been there with the checklist and would have called off Estrella Yuan. He would come down. They'd take off his handcuffs, and he'd go to the next step. Is that right? Yes, and they were asked what would happen if you called the person's name, and they didn't, and they weren't on the list, and they said, well, nobody would come forward. Now, what the defense is complaining about is the agent said that they didn't look at the photograph and compare the photograph as they called the name, and really what their argument goes to is the validity of the procedures that the government uses. They want to argue it's not good enough. You can't show he was actually on the plane, and that's their right, and they argued that reciprocally in their opening and their closing, and then their challenge is to the evidence, and the jury was allowed to consider that. But what the evidence shows is that the government followed these procedures, prepared an I-205 as it always does in the normal course of business in two cities, an originating city and a departing city, and the errors that are on the document were not errors that were made by government officials who were reporting information pursuant to a duty by law. There's no claim that the ICE agents did something wrong, that they signed in the wrong place. All the claims are that the alien signed in the wrong place, and somebody else signed, presumably an alien, but we don't know. If there are no further questions, the government would submit the remaining issues on its briefs. Thank you. All right. We'll hear from defense counsel in rebuttal. The hearing that my opposing counsel referred to did not consider Exhibits 1, 2, 3, 6, and 9. It only had to do with the 1999 conviction that resulted in a stipulation on alienage. The court in no way considered the prejudicial evidence of Exhibits 1, 2, 3, 6, and 9 when they were discussing the stipulation. The evidence on the other elements was overwhelming. There was not the admission. Was this raised with the district court at the time of the hearing? Your Honor, it was. The government didn't introduce these exhibits. I understand. But you were aware of their existence at that point and that the government wanted to put them in? Your Honor, trial counsel objected based on 403 in his pleading, and he objected based on 403 every time the exhibits were offered, and that's all that trial counsel had an obligation to do. It was the government's obligation to present admissible evidence and the court's duty to carefully limit that evidence. The evidence opposing counsel claims that somehow the fact that there was a Miranda challenge affects this, but it did not. By the time that trial came along, that had been resolved. The admissions to alienage and the admissions to voluntarily entering were in the record. The agents had already testified at trial on those matters. Also, the circumstances under which Mr. Estrella Iwan entered the country, this circuit has said that no rational juror could have concluded that it wasn't knowing involuntary. So there was just no issue there. We thank you both for your very fine arguments. It's nice to have able lawyers appear before us, and you both qualify in that category. So we thank you for your argument. Thank you, Your Honor. The case of United States v. Estrella Iwan is submitted.
judges: Marbley, Gould, Smith M.